UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CIV-61284-RAR

**JAY GOODLEY,**

    Plaintiff,

v.

**CHARLES M. GREENE**, *individually and in his official capacity as a Justice of the Seventeenth Judicial Circuit Court of Broward County*,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** comes before the Court on Defendant's Motion to Dismiss Complaint [ECF No. 9] ("Motion"), filed on July 19, 2021. The Court having carefully reviewed Defendant's Motion, Plaintiff's Response in Opposition [ECF No. 11] ("Response"), and Defendant's Reply [ECF No. 12] ("Reply"), and being otherwise fully advised, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss [ECF No. 9] is **GRANTED** for the reasons set forth below.

## BACKGROUND

Plaintiff Jay Goodley filed a civil rights action pursuant to 42 U.S.C. § 1983 alleging a deprivation of a right under color of state law against Defendant, Charles Greene, a judge of the Seventeenth Judicial Circuit Court of Broward County. *See* Mot. at 1. This action stems from a probate matter concerning the guardianship of a relative of the Plaintiff. *See* Mot. at 2. Defendant was briefly assigned to the probate case, in which Plaintiff was also a litigant. On February 5, 2018, Defendant recused himself from the probate case involving the Plaintiff. [ECF No. 9-1] at

25.[1] Plaintiff alleges that after Defendant recused himself, he continued to take actions related to the case, causing Plaintiff financial losses, as well as pain and suffering. [ECF No. 1] at 2.

## LEGAL STANDARD

The Court relies on two legal standards in order to address the instant Motion: Article III standing and the doctrine of judicial immunity. Each will be addressed in turn.

### I. Article III Standing

Article III of the United States Constitution limits federal court jurisdiction to actual cases and controversies. U.S. Const. art. III, § 2, cl. 1. Standing, ripeness, and mootness are the three traditional doctrines governing whether a case or controversy exists. *Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 924 (11th Cir. 2020). Standing is treated as a jurisdictional issue and rulings based on such are treated as a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). *See Cone Corp. v. Fla. Dep't of Transp.*, 921 F.2d 1190, 1203, n.42 (11th Cir. 1991) (citations and internal quotations omitted).

To demonstrate standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). With respect to "injury in fact," a plaintiff must plead facts to show that he suffered an "'invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560).

---

[1] The Court takes judicial notice of Defendant's Exhibit A, Docket PRC160001493, pertaining to the probate case in which Plaintiff was a litigant. [ECF No. 9-1]. It is well established that courts may take judicial notice of court documents when a motion to dismiss is before the court. *See Lowman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013). Taking judicial notice of a state court docket (a matter of public record) does not convert a motion to dismiss into a motion for summary judgment. *See Klopfenstein v. Deutsche Bank Sec., Inc.*, 592 F. App'x 812, 816 (11th Cir. 2014).

An injury must be both particularized and concrete, with neither alone being sufficient to establish injury in fact. *Id*. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" *Id.* (citations omitted). A concrete injury is one which exists. *Id*. Further, insofar as a plaintiff is seeking declaratory relief, he must allege from facts that there is a "substantial likelihood that he will suffer injury in the future." *Malowney v. Fed. Collection Deposit Grp.,* 193 F.3d 1342, 1346 (11th Cir. 1999) (citations omitted).

## II.     Judicial Immunity

"A judge enjoys absolute immunity from suit for judicial acts performed within the jurisdiction of his court . . . regardless of whether he made a mistake, acted maliciously, or exceeded his authority . . . unless [the judge] acted in the clear absence of all jurisdiction." *McCullough v. Finley*, 907 F.3d 1324, 1330–32 (11th Cir. 2018) (citations omitted). A judge acts in the clear absence of all jurisdiction if the matter upon which he acts is clearly outside the subject matter jurisdiction of the court over which he presides. *See Stump v. Sparkman*, 435 U.S. 349, 357-359 (1978). The scope of a judge's jurisdiction must be construed broadly where the issue is the immunity of the judge. *Id.* at 356. Four factors inform whether the nature and functions of alleged acts are judicial: (1) the precise act complained of is a normal judicial function; (2) the events involved occurred in the judge's chambers; (3) the controversy centered around a case then pending before the judge; and (4) the confrontation arose directly and immediately out of a visit to the judge in his official capacity. *McCullough,* 907 F.3d at 1331.

## **ANALYSIS**

Defendant seeks dismissal of the Complaint on five grounds: lack of justiciable controversy; lack of standing; Eleventh Amendment Immunity; the Rooker-Feldman doctrine; and judicial immunity. Mot. at 3. In response, Plaintiff maintains that Defendant was without judicial

jurisdiction; consequently, his actions invaded Plaintiff's right to equal protection and procedural due process under the Fourteenth Amendment. Resp. at 15.

As explained below, the Court finds that Plaintiff has failed to establish Article III standing—and even if not for lack of standing, the doctrine of absolute judicial immunity bars the Defendant from suit. The Court declines to wade into Defendant's remaining grounds for dismissal.

### I. Plaintiff Lacks Standing and Fails to Show He is Entitled to Declaratory Relief

As described above, courts treat a lack of standing as a jurisdictional issue. If the plaintiff fails to demonstrate standing, the case must be dismissed under Rule 12(b)(1). Defendant, in his Motion and Reply, challenges the first prong of the standing analysis: whether Plaintiff suffered an injury in fact. *See* Mot. at 6-7; Reply at 3-4.

In an effort to establish an injury in fact, Plaintiff asserts that "multiple actions were taken by Judge Charles M. Greene post his being recused by court order . . . causing financial losses as well as pain and suffering to the Plaintiff." *See* Compl. at 2. In support of this assertion, Plaintiff describes four different actions taken by Defendant following his recusal. *Id.* at 2-5. But none of these actions satisfy his burden to show standing—even when liberally construed. *See Waldman v. Conway*, 871 F.3d 1283, 1289 (11th Cir. 2017) (recognizing that "[a] *pro se* pleading is held to a less stringent standard than a pleading drafted by an attorney and is liberally construed.") (cleaned up). The Court will address each action taken by Defendant in turn.

#### i. *March 2018 Orders*

First, Plaintiff takes issue with a March 8, 2018 order signed by Defendant. The order singles Plaintiff out by name. [ECF No. 9-2] at 2. In doing so, Plaintiff claims Defendant was "treating Plaintiff differently from other litigants while it also altered an existing statute along with

other irregularities." Compl. at 3.  The order states, "[t]he authority of the Emergency Temporary Guardian is hereby extended until the dispositive motions filed on behalf of Jay Goodley are addressed by this Court or a permanent guardian is appointed." [ECF No. 9-2] at 2. Other than noting he was singled out by name, Plaintiff does not explain nor offer any support for how this statement may have caused him harm.[2] The Court therefore fails to see how this statement—which simply acknowledged the existence of outstanding motions in the case affecting the appointment of a permanent guardian—alleges either a concrete or particularized injury in fact.

### ii. April 25, 2018 Hearing

Next, Plaintiff discusses an April 25, 2018 telephonic hearing, in which Defendant stated that "once the Court enters an order of recusal, the Court is not possessed of jurisdiction . . . ." Compl. at 3.  During the hearing, Defendant refused to proceed with making any decisions in the case and stated that he was "being extremely cautious pursuant to the Rules of Judicial Administration." Resp. at 25; 33.  The Court has confirmed that Judge Greene did not enter any court orders after the April 25, 2018 hearing. [ECF No. 9-1] at 22.  And again, Plaintiff fails to show how this hearing, where no action was taken, harmed him.  If anything, Defendant acted in accordance with his order of recusal by refusing to proceed further with the case.[3]

---

[2]  Plaintiff also claims that Defendant altered the relevant statute pertaining to emergency temporary guardianship and "the altering of this law . . . may have enriched attorneys . . . ." Resp. at 7.  But again, Plaintiff fails to allege any type of particularized or concrete harm that arose from this alleged alteration. A vague assertion that attorneys "may" have been enriched in no way establishes that either (1) attorneys were *actually* enriched; and (2) that the enrichment of attorneys caused injury to Plaintiff.

[3]  While not addressed by Plaintiff in his Complaint, it is worth noting that on June 13, 2018, Defendant's colleague, Judge Weinstein, granted Plaintiff's Motion to Vacate Orders of Defendant post-recusal. [ECF No. 9-3] at 2 ("Motion to Vacate").  Judge Weinstein's order stated: "(1) All orders signed by Judge Greene after February 5, 2018 shall be vacated & considered null and void; (2) The Rulings contained in the Orders signed by Judge Greene after February 5, 2018 are hereby extended until further order of this Court." *Id.* As a judicial officer in the state of Florida, Judge Weinstein is required to "perform the duties of judicial office impartially and diligently."  Code of Judicial Conduct for the State of Florida, Canon 3.  It is this Court's belief that Judge Weinstein did just that, and in performing his own judicial diligence, found that the orders entered by Defendant *were both appropriate and legally sound*.  Thus, even if Plaintiff were able

### *iii. October 19, 2018 Hearing*

The next issue raised by Plaintiff occurred during an October 19, 2018 hearing held in front of a different jurist—Judge Weinstein. Plaintiff alleges that Judge Weinstein left the courtroom to confer with Defendant, suggesting that this conferral was related to Plaintiff's case. Compl. at 4. Defendant notes that this assertion is "pure speculation that the conversation had anything to do with the Plaintiff at all." Mot. at 3. The Court agrees. Defendant and Judge Weinstein preside in the same courthouse together. There are many reasons—wholly unrelated to Plaintiff or his case—why Defendant could have requested to see Judge Weinstein. Plaintiff cannot show a particularized injury (*i.e.* affecting the Plaintiff in a "personal and individual way") based on pure guesswork. *See Spokeo*, 136 S. Ct. at 1548.

### *iv. February 2020 Orders*

Finally, Plaintiff takes issue with two orders entered in February 2020. Defendant signed an Agreed Order settling the probate case on February 26, 2020. [ECF No. 9-1] at 4. The next day, an order was entered vacating the February 26, 2020 order—apparently in error. *Id*. Consequently, on March 2, 2020, a second Agreed Order was entered settling the case. *Id*. Again, Plaintiff fails to show how this apparent mistake caused him any concrete harm. The mistake was timely corrected within 24 hours, Defendant had no further involvement in the matter, and ultimately the same Agreed Order was adopted, without any further objections noted on the docket. [ECF No. 9-1] at 3-4.

In sum, none of the four aforementioned actions taken in Plaintiff's state court probate case evidence any concrete harm. On the contrary—they are precisely the type of "conjectural or

---

to somehow assert an injury in fact from the actions taken before Plaintiff's Motion to Vacate was granted, those injuries are no longer redressable as the Seventeenth Judicial Circuit Court of Broward County has taken the corrective action it deemed appropriate in this case. *See Lujan*, 504 U.S. at 560-61.

hypothetical" harm insufficient to confer subject matter jurisdiction due to a lack of standing. *See Spokeo*, 136 S.Ct. at 1548. Moreover, insofar as Plaintiff seeks declaratory relief, he has also failed to allege facts showing a "substantial likelihood" that he will suffer injury in the future. *See Malowney,* 193 F.3d at 1346. In an effort to establish such future injury, Plaintiff attempts to assert that Defendant's position of power will likely cause Defendant to retaliate against Plaintiff in the future. Resp. at 16. But the record rebuts this argument. The case at issue here was discharged on October 6, 2020. [ECF No. 9-1] at 1. There have been no further proceedings in the matter. *Id*. Thus, there is no likelihood of future harm to Plaintiff by Defendant.

## II. Defendant is Entitled to Judicial Immunity

In order to determine whether Defendant's actions are protected by judicial immunity, the Court applies the two-part test laid out in *Stump*. *See Stump*, 435 U.S. at 361-62. As explained below, both parts of the test are satisfied here, and Defendant is thus entitled to judicial immunity.

### i. *All actions taken by Defendant are judicial in nature*

As discussed above, Plaintiff's Complaint focuses on four incidents: the March 6, 2018 hearing and resulting orders; the April 25, 2018 hearing; the October 19, 2018 hearing; and two orders issued in February 2020. When assessing whether these were judicial acts, the Court looks to the four factors laid out in *McCullough*. 907 F.3d at 1331. Naturally, judicial proceedings and the entry of judicial orders are normal judicial functions. All of these events occurred within the courthouse. Each hearing and order addressed Plaintiff's state probate matter. And each of these four incidents arose directly out of interactions with Judge Greene or another Judge assigned to the probate case. Thus, the *McCullough* factors are satisfied, and each of Defendant's actions were judicial in nature.

### *ii. Defendant did not act in clear absence of all jurisdiction*

So long as a judge did not act without clear jurisdiction, judicial acts are protected by absolute judicial immunity. *See Sibley v. Lando*, 437 F.3d 1067, 1072 (11th Cir. 2005). "A judge acts in clear absence of all jurisdiction only if he lacked subject-matter jurisdiction." *McCullough*, 907 F.3d at 1332 (internal quotations and citation omitted); *see also Stump*, 435 U.S. at 357; *accord Dykes v. Hosemann*, 776 F.2d 942, 943 (11th Cir. 1985) ("We . . . reassert the common law doctrine that a judge enjoys absolute immunity where he or she had subject matter jurisdiction over the matter forming the basis for such liability."). Plaintiff argues that Defendant's February 5, 2018 Order of Recusal stripped him of all jurisdiction over the case, meaning that all judicial acts taken by Defendant after that date were "in the clear absence of all jurisdiction." Resp. at 6; 13.

"Whether a judge's grant of a recusal motion divests him of all jurisdiction for purposes of the judicial immunity analysis is a question of state law, and [Plaintiff] has identified no authority for the proposition that recusal strips a judge of subject matter jurisdiction." *Muhammad v. Bethel-Muhammad*, No. 11-0690, 2013 WL 5531395, at *4 (N.D. Ala. Oct. 7, 2013) (citing *Sibley*, 437 F.3d at 1069-72). In fact, Florida law indicates otherwise.

As an initial matter, there is no doubt that the Seventeenth Judicial Circuit Court of Broward County had proper jurisdiction over the probate matter in which Plaintiff was a litigant—a fact Plaintiff does not refute. *See* Fla. Const. art. V, § 20; *see also Lovett v. Lovett*, 112 So. 768, 775 (Fla. 1927) (holding subject-matter jurisdiction is conferred on a Florida court by the state constitution and applicable statutes). And under Florida law, jurisdiction is vested in the court itself, *not in any individual judge of the court*. *Kalmanson v. Lockett*, 848 So. 2d 374, 380 (Fla. 5th DCA 2003) (emphasis added) (citations omitted). As explained in *Kalmanson*, the recusal of one judge does not diminish the jurisdiction of the circuit court over the case; indeed, *Kalmanson*

rejected the argument that a judge is stripped of absolute judicial immunity for acts taken in his judicial capacity *after* he recuses from a case. *Id.* at 380; *see also Sibley v. Lando*, No. 03-21728, 2005 WL 6108991, at *8-9 (S.D. Fla. Apr. 8, 2005) (holding that a judge was entitled to judicial immunity for acts taken after he recused himself from a case because the acts may have been in excess of his jurisdiction, but were not in clear absence of jurisdiction).

Here, the Seventeenth Judicial Circuit Court retained jurisdiction throughout the pendency of the probate matter, and because jurisdiction is vested in the court, not in an individual judge, Defendant did not act in the clear absence of all jurisdiction. At a minimum, there is "at least a colorable argument that, even if [Defendant's alleged] return to the case was improper, any such impropriety did not preclude him from having subject matter jurisdiction over the case . . . [and] a colorable argument is all that [Defendant] needs to retain his judicial immunity." *Muhammad*, 2013 WL 5531395, at *4 ("Immunity is lost only by an utter, obvious lack of jurisdiction; if jurisdiction existed and [Defendant] merely exceeded that jurisdiction, he remains immune. Indeed, even if subject matter jurisdiction was actually lacking but the jurisdictional question is colorable, his immunity is unbroken.").

Ultimately, it is clear that Defendant's acts were done within his judicial capacity, and he did not act in the clear absence of jurisdiction. Thus, even if Defendant were to have somehow acted erroneously, maliciously, or in excess of his authority, judicial immunity still applies.[4]

---

[4] Notably, some courts have held that a claim for prospective declaratory relief is an exception to judicial immunity under 42 U.S.C. § 1983. *See Snow v. King*, No. 17-1048-VEH, 2018 WL 656032 at *6 (N.D. Ala. Feb. 1, 2018). Here, however, Plaintiff's request for declaratory relief appears to be *retrospective* in nature. Compl. at 5. Thus, Plaintiff's requested relief does not bar Defendant from claiming judicial immunity—nor is the Court prevented from holding that judicial immunity applies. *See id.*

**CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss Complaint **[ECF No. 9]** is **GRANTED**. The Court notes that dismissal for lack of subject matter jurisdiction is not a judgment on the merits and is entered without prejudice. *Stalley ex rel. U.S. v. Orlando Regional Healthcare System, Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008). But given that Defendant is entitled to judicial immunity, he is immune from suit regarding the judicial acts addressed in Plaintiff's Complaint. Accordingly, this action is **DISMISSED** *with prejudice* and the Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 17th day of September, 2021.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**